**E-FILED**
Monday, 20 December, 2010  03:42:43 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANITA RADEMAKER, as<br>parent and next best friend of<br>N.R., a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | CASE NO:_____ |
| JAY BLAIR, JERRY MEYER,<br>MIDWEST CENTRAL HIGH SCHOOL,<br>and MIDWEST CENTRAL UNIT<br>SCHOOL DISTRICT # 191, | ) ) ) ) ) | |
| Defendants. | ) | **EQUITABLE RELIEF IS SOUGHT** |

## PETITION FOR TEMPORARY RESTRAINING ORDER

NOW COMES Plaintiff, ANITA RADEMAKER, as parent and next best friend of N.R., a minor, by and through her attorney, JIM ROCHFORD AND ASSOCIATES, and for her Petition for Temporary Restraining Order against Defendants, JAY BLAIR, JERRY MEYER, and MIDWEST CENTRAL UNIT SCHOOL DISTRICT #191, states and complains as follows:

1. This Court has subject matter jurisdiction over the afore-captioned matter under 28 U.S.C. §1331 as the underlying matter involves a civil action arising under the Constitution, laws, and treaties of the United States, specifically Americans with Disabilities Act, 42 U.S.C. § 12132, and Rehabilitation Act. 29 U.S.C.S. § 794(a).

2. This Court has personal jurisdiction over Defendants. Defendant Jay Blair is the principal of MIDWEST CENTRAL HIGH SCHOOL and, upon information and belief, resides in Mason County, Illinois, located within the boundaries of the Central District Court of Illinois. MIDWEST CENTRAL HIGH SCHOOL is controlled and operated by MIDWEST CENTRAL UNIT SCHOOL DISTRICT #191. Defendant JERRY MEYER is the Superintendant of MIDWEST CENTRAL UNIT SCHOOL DISTRICT #191, and, upon information and belief, resides in Mason County, Illinois, located within the boundaries of the Central District Court of Illinois. MIDWEST CENTRAL HIGH SCHOOL and MIDWEST CENTRAL UNIT SCHOOL DISTRICT #191 operate in Mason County, Illinois, located within the boundaries of the Central District Court of Illinois.

3. Venue is proper under 28 U.S.C. §1391(b)(1) and (2) as all of the Defendants reside within the boundaries of the Central District Court of Illinois and all or a substantial part of the underlying events and omissions giving rise to the claim occurred within the boundaries of the Central District of Illinois.

4.    Plaintiff seeks issuance of a temporary injunction against the aforementioned Defendants without notice pursuant to Fed. R. Civ. P. 65(b). See attached affidavits of Kirk Whiteman and Jim Rochford, Esq.

5. ANITA RADEMAKER is the natural mother and a legal guardian of the minor, N.R..

6. N.R. is a minor currently enrolled as a student at Midwest Central High School, a public school controlled and operated by MIDWEST CENTRAL UNIT SCHOOL DISTRICT #191.

7. N.R. suffers from a disability, Attention Deficit Hyperactivity Disorder ("ADHD"), Predominately Hyperactive Compulsive Type, as diagnosed by Karla White M.S., L.C.P.C. on or about November 21, 2010 and for which he has been prescribed medication by Dr. Fisher. See attached medical records of Karla White and Dr. Fisher. See attached medical records.

8. Defendants were immediately notified of N.R.'s aforementioned disabling condition once a diagnosis had been reached.

9. Upon information and belief, N.R. became ineligible to compete in extracurricular athletic activities prior to the aforementioned diagnosis due to attempting to meet his academic and extracurricular activities without receiving appropriate medical treatment and other appropriate accommodations for ADHD.

10. Since being diagnosed with ADHD and beginning to receive medication with oversight for said ADHD, N.R.'s ability to function academically has markedly improved, and he is currently passing all of this courses for the semester.

11. Defendant MIDWEST CENTRAL UNIT SCHOOL DISTRICT #191 ("District") has adopted in its athletics code, a deviation from Illinois High School Associations bylaw 3.022 concerning the ability of a student athlete to utilize an approved summer school course as a part of his or her overall semester grade. While such an action is permitted under the IHSA bylaw 3.022, the Defendant's Athletics Code expressly denies the ability of a student to utilize any form of summer school course as a part of his or her semester grade without any explanation of any harm or other policy interest the District seeks to correct through said deviation. See attached Athletics Code; ISHA bylaw 3.022.

12. Due to the ongoing inability of N.R. to participate in extracurricular athletics, he has been and continues to be irreparably harmed in that his ability to procure athletics scholarship or other assistance related to his athletic skill from a college or university has

been materially limited and compromised, especially by his inability to participate in holiday tournaments such as the Christmas tournament. See attached affidavit of Kirk Whiteman.

13. Moreover, the ongoing ineligibility has irreparably harmed N.R. in that he has experienced an aggravation of severe emotional distress first caused by Defendant JAY BLAIR publicly proclaiming him to be a "troublemaker" and encouraging the faculty to closely scrutinize his behavior at a faculty meeting prior to N.R. beginning high school and exasperated and aggravated to the point of suicidal ideation by the categorical inflexibility of the Defendants to recognize his strenuous attempts to accept responsibility for his disability and seek the help needed to treat that disability.

14. On or about December 16, 2010, N.R., through counsel, respectfully requested the District implement the application of ISHA Rule 3.022 as well as the provision of other necessary academic support to reasonably accommodate his disability. The District refused to intervene and provide any accommodation at that time despite having knowledge of the aforementioned disability and deferred any final decision to Defendants JAY BLAIR and JERRY MEYER.

15. On or about December 17, 2010, JERRY MEYER, after, upon information and belief, consultation with JAY BLAIR denied to offer any accommodation as it related to the implementation of ISHA Rule 3.022. See attached letter of JERRY MEYER.

16. No adequate remedy at law exists for N.R. to regain his eligibility back prior to the Christmas tournament.

17. Defendants failure to implement ISHA Rule 3.022 constitutes a denial of eligibility due to N.R.'s disability since such an accommodation is not so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change since the only ascertainable harm sough to be curbed by the rule is student athletes using more academically lenient summer courses to pass, and N.R.'s summer school course was taken at Morton High School, a course, upon information and belief, previously approved by the Vice-Principal of Midwest Central High School.

18. Moreover, the application of ISHA Rule 3.022 adequately protects the public interest in maintaining a level field of competition.

19. Plaintiff requests a waiver of bond in the afore-captioned matter.

WHEREFORE Plaintiff, ANITA RADEMAKER, as parent and next best friend of N.R., a minor, by and through her attorney, JIM ROCHFORD AND ASSOCIATES, prays this Honorable Court enter a Temporary Restraining Order enjoining the aforementioned Defendants from discriminating against N.R. by continuing to hold him ineligible due his disability, and specifically instructing said Defendants to refrain from continuing such conduct by permitting N.R. to participate in extracurricular activities including Men's

Basketball until such time as this matter may be set for a Hearing on a Motion for Preliminary Injunction, setting this matter for a Hearing on the motion for Preliminary Injunction, and for such other relief as may be just and proper.


Dated: 12/20/10


Respectfully Submitted,

ANITA RADEMAKER, as parent and next best friend of N.R., a minor, Plaintiff,


_____ s/ Jim Rochford, Esq._____

For Jim Rochford and Associates


Jim Rochford, Esq.
Tim Cushing, Esq.
Jim Rochford & Associates
124 S.W. Adams Suite 500
Peoria, Illinois  61602-1371
Phone: (309) 637-5322
Fax: (309) 637-5346
E-Mail drochford@rochfordlaw.com
Peoria Attorney #1612

## VERIFICATION

I, ANITA RADEMAKER, do state and depose that I am the parent and next best friend of the minor, N█████ R█████, Plaintiff herein and that I have reviewed the above and foregoing instrument and same is true and correct to the best of my information and belief.

*Anita L. Rademaker*

ANITA RADEMAKER

Subscribed and sworn to before me this

__20__ day of __December__, 2010.

*Julie R Hindert*

Notary Public

"OFFICIAL SEAL"
Julie R Hindert
Notary Public, State of Illinois
My Commission Expires 9/24/2013

p.1

COUNTY OF PEORIA          )
                          )
STATE OF ILLINOIS         )

## AFFIDAVIT

I, Kirk Whiteman, state under oath as follows:

1. I am over the age of 18 and am otherwise competent to testify to the matters herein.
2. I am currently the Head Men's Basketball Coach at Lincoln Community College, a junior college located in Lincoln, IL.
3. During the collegiate basketball season, head basketball coaches, such as myself, generally rely their scouts to observe prospective scholarship athletes at high school games due to their limited time availability.
4. The inability of a scout to observe and report a prospective scholarship athlete's performance during a game seriously and adversely impacts on the ability of a head coach, such as myself to offer said athlete a scholarship since I have less ability to ascertain the prospect's abilities.
5. The high school Christmas/Winter vacation time, particularly at Christmas tournaments, is one of the only times I have to personally observe prospects play in games.
6. It adversely impacts my ability to personally evaluate player such as N█████ R█████████ by being unable to observe him play in Midwest Central games over the Christmas/Winter vacation period.
7. I am presently planning to attend the Midwest Central men's basketball game on Monday, December 20, 2010.

FURTHER AFFIANT SAYETH NOT.

_____
AFFIANT

Subscribed and sworn to before me this
20th day of DECEMBER, 2010.

_____
Notary Public

```
"OFFICIAL SEAL"
Debra J Rochford
Notary Public, State of Illinois
Commission Expires 7/22/2012
```

EXHIBIT

A

COUNTY OF PEORIA     )
                           )
STATE OF ILLINOIS     )

## AFFIDAVIT

I, Jim Rochford, Esq, state under oath as follows:

1. I am over the age of 18 and am otherwise competent to testify to the matters herein.
2. I am a licensed attorney and represent the Plaintiff, ANITA RADEMAKER, as parent and next best friend of N█████████████, in her Petition for Temporary Restraining Order against Jay Blair, Jerry Meyer, Midwest Central High School, and Midewest Central Unit School District #191.
3. I have personally counselted with John R. Day regarding the facts in the aforementioned matter and he is currently in the process of evaluating and rendering a diagnosis concerning N███████ R████████, which will be available at the time of hearing.
4. Prior to bringing this matter before the Court for entry of a Temporary Restraining Order without notice and pursuant to Federal Rule of Civil Procedure 65(b), I personally or my employees acting under my direction and control have made the following attempts to notify the attorney for Defendants, Michael Tibbs of Miller, Hall and Triggs of our efforts to seek temporary relief as follows:
   a. I informed Mr. Tibbs in the presence of the School Board, Superintendant, and Principal on the evening of December 16, 2010 of my clients intent to file an injunction in federal court in the event a reasonable accommodation was not made for N████████ R███████.
   b. I again informed Mr. Tibbs we would be filing an injunction, subject to our client's authorization, in Federal Court on the late afternoon of December 17, 2010 after first being notified by Mr. Tibbs of the decision of the Superintendant in response to our request for reasonable accommodation.
   c. I sent Mr. Tibbs the enclosed letter indicating our intent to seek a Temporary Restraining Order on or about December 20, 2010. See attached.

**FURTHER AFFIANT SAYETH NOT.**

*Jim Rochford*

AFFIANT

Subscribed and sworn to before me this
20th day of December, 2010.

*Debra J Rochford*

Notary Public

```
"OFFICIAL SEAL"
Debra J Rochford
Notary Public, State of Illinois
Commission Expires 7/22/2012
```

**EXHIBIT**

B-1

## JIM ROCHFORD AND ASSOCIATES
### Attorneys at Law

| | | |
|---|---|---|
| Jim Rochford, Esq.<br>Timothy P. Cushing, Esq.<br>Of Counsel: Cynthia Volk, Esq. | 124 SW Adams<br>Suite 500<br>Peoria, IL 61602 | Phone: (309) 637-5322<br>Fax: (309) 637-5346<br>E-Mail: drochford@rochfordlaw.com |

December 20, 2010

Michael Tibbs, Esq.
Miller, Hall & Triggs, LLC
416 Main Street
Peoria, IL 61602

Re:            N██ R██████████

Our File No:        10-1121

Dear Michael,

Please see enclosed copies of a Petition for Temporary Injunction with Memorandum in Support, proposed order, and Petition for Preliminary Injunction and Memorandum in Support we are filing today on behalf of Nicholas Rademaker and for which we are seeking a hearing before one of the judges today. We will forward you any specific time we get from the Court upon our receipt of it.

Sincerely,

*Jim Rochford*

for Jim Rochford & Associates

c:\users\public\documents\rochford and associates\tim files\rademaker-10-1121\letter oa 12-2█
10.docx

EXHIBIT
B-2

## Timothy P. Cushing

| | |
|---|---|
| **From:** | Lou Rademaker <ntrfarms@yahoo.com> |
| **Sent:** | Saturday, December 18, 2010 9:32 PM |
| **To:** | tcushing@rochfordlaw.com |
| **Subject:** | Fw: credentials |

Here are Karla Whites credentials I hope this is what you need. If not she said she could send her resume when she gets to the office on Monday morning.
Thanks Lou
----- Forwarded Message ----
**From:** karla white <karlawhi@yahoo.com>
**To:** ntrfarms@yahoo.com
**Sent:** Sat, December 18, 2010 6:12:12 PM
**Subject:** credentials


Hi Lou,

My credentials are as follow:

Master of Science in Community Counseling, Eastern Illinois University

Licensed Clinical Professional Counselor, Illinois License

National Certified Counselor, (NCC), Issued By National Board for Certified Counselors

I hope this is what you need.
Sincerely,
Karla White


Karla White M.S., L.C.P.C.
Associates in Christian Counseling
2229 N. Linn St.
Peoria, Il. 61604
(309)681-9432

CONFIDENTIALITY:
This communication, including attachments, is for exclusive use of the
addressee(s) and may contain proprietary, confidential or privileged information. If you are not the intended recipient, any use, copying, disclosure, or distribution or the taking of any action in reliance upon this information is strictly prohibited.

If you are not the intended recipient, please notify the sender immediately and delete this communication and destroy all copies.



**ASSOCIATES IN CHRISTIAN COUNSELING GROUP, INC.**
2229 N. Linn Street, Peoria, IL 61604
Offices in Peoria, Pekin & Salem
P: (309) 681-9432    F: (309) 681-9164
www.aiccgroup.org

November 21, 2010

RE: N██ R█████

Dear Mr. and Mrs. Rademaker,

I would like to inform you that I have diagnosed N██ with Attention Deficit Hyperactivity Disorder, Predominantly Hyperactive Impulsive Type, based on the symptoms reported by you and N██ in our session. As you may recall, N██ met the criteria needed for this diagnosis as we discussed in session.

Please let me know if you have any further questions or concerns.

Sincerely,

Karla White M.S., L.C.P.C.
Associates in Christian Counseling
2229 N. Linn St.
Peoria, Il. 61604
(309) 681-9432

**EXHIBIT**

C-2

**ASSOCIATES IN CHRISTIAN COUNSELING-GROUP, INC.**

2229 N. Linn Street, Peoria, IL 61604
Offices in Peoria, Pekin & Salem
P: (309) 681-0432    F: (309) 681-9164
www.alcctgroup.org

December 7, 2010

Lou Rademaker

RE: N██ R███████

Dear Mr. and Mrs. Rademaker,

I would like to inform you that I have diagnosed N██ with Attention Deficit Hyperactivity Disorder, Predominantly Hyperactive Impulsive Type, based on the symptoms reported by you and N██ in our session. As you may recall, N██ met the criteria needed for this diagnosis as we discussed in session. These criteria consisted of the following from the DSM IV TR:

- Often fidgets with hands or feet or squirms in seat

- Often leaves seat in classroom or in other situations in which remaining seated is expected

- Subjective feelings of restlessness

- Often talks excessively

- Often has difficulty awaiting turn

- Often has difficulty waiting for questions to be asked before blurting out answers

- Often does not follow through on instructions or fails to finish study or schoolwork.

- Can be easily distracted by extraneous stimuli

**EXHIBIT**

C-3

The majority of these symptoms fall within the category of Hyperactivity and Impulsivity, therefore warranting this as a specification within his diagnosis. According to the interview with N█████ these symptoms have been present in home and school settings. They have caused clinically significant impairment within his academic functioning.

Please let me know if you have any further questions or concerns.

Sincerely,

Karla White M.S., L.C.P.C.
Associates in Christian Counseling
2229 N. Linn St.
Peoria, Il. 61604
(       )      9432

Rx Dat

EXHIBIT
tabbies
C-4

## PROGRESS NOTES
(309)347-2700

Pekin Family Practice
2355 Broadway
Pekin, IL  61554

Dr. C. William Fisher

Anila

Name _R_____ N____     DOB 3/1/93     Phone 840-0163

| 11/4/10 | Spoke c̄ Carla, counselor, She states N_____ |
| | is positive on ADHD scale. Spoke w/ Dr Fisher. |
| | Start Ritalin SR 20mg q Am #30 ∅R = Rx given. |
| | Must come in for a height, weight B/P ✓ |
| | q month. Cont counseling. He agrees. J Ross APN |

EXHIBIT
C-5

# PEKIN FAMILY PRACTICE
## 24 HOUR RESPONSE FORM

Date: 11/12/10

Time: 9:58

Fisher / Ross
Rep:

PATIENT NAME: N███ R███████  DOB: 3/1/93

PHONE HOME: _____  WORK: _____  CELL: _____

PHARMACY: _____  PHARMACY PHONE: _____

WHO CALLED: _____  PHONE: _____

REQUEST/MESSAGE:

Pt put on Ritalin SR
20mg - mom states
she told Carla that
he tried Metadate CD
last year & it didn't
work wants
something dif

RESPONSE:

Δ to Vyvanse 30mg
+ PO QD
#30

Mom aware

OK TO FILL

COMPLETED BY: _____  DATE/TIME: 11/12/10

EXHIBIT
C-6

PEKIN FAMILY PRACTICE, P.C.
C. WILLIAM FISHER, D.O., A.B.F.P.
DEA # BF0694059
JEANNA ROSS, A.P.N., M.S.N., N.P.-C
DEA # MR0955433
2355 BROADWAY ROAD
PEKIN, IL 61554-9369
(309) 347-2700

NAME _____ AGE _____

ADDRESS _____ DATE 10/13

TAMPER-RESISTANT FEATURES INCLUDE: SAFETY BLUE
ERASE-RESISTANT BACKGROUND, "ILLEGAL" PANTOGRAPH,
QUANTITY CHECK-OFF BOXES, AND REFILL INDICATOR

R

*Vyvanse 30mg*
*PO QD*
*#30*

☐ 1-24
☐ 25-49
☐ 50-74
☐ 75-100
☐ 101-150
☑ 151 and up

REFILL NR _____
☐ MAY SUBSTITUTE
☐ MAY NOT SUBSTITUTE

_____
(signature)

EXHIBIT
C-7



**restat**
A Comas Company

November 17, 2010

N████ R████████
6310 WAGONSELLER RD
MANITO, IL  61546

Dear N████ R████████

In regards to your request for a prior authorization for Vyvanse 30 mg Cap, we must
inform you that this request has been denied. The reason for denial is that Your plan
requires that Vyvanse only be used for members who have ADHD and for those
members who have tried and failed Adderall, Adderall XR, or a methylphenidate
product AND Dexedrine Spansules (dextroamphetamine ER). The request for Vyvanse
is denied and does not meet medical necessity criteria.

This denial does not imply or suggest that the indicated therapy is improper,
unnecessary or incorrect. Only the Physician can determine the proper treatment plan
for the patient. What this denial does confirm is that this type of therapy exceeds the
benefit under the current Prescription Benefit Plan.

Please feel free to contact the Clinical Line with any questions at 877-526-9906.

Very truly yours,
Restat Clinical Services

cc:   CURTIS FISHER DO
Fax:   (309) 347-5393

*Adderall XR handwritten annotation*

*handwritten: 19/10*

*handwritten: Pd for Med
cost of pocket  working for now*

**EXHIBIT**
C-2

## 3.020   SCHOLASTIC STANDING

**3.021**   They shall be doing passing work in at least twenty (20) credit hours of high school work per week.

 **3.022**   They shall, unless they are entering high school for the first time, have credit on the school records for twenty (20) credit hours of high school work for the previous semester.  Such work shall have been completed in the semester for which credit is granted or in a recognized summer school program which has been approved by the Board of Education and for which graduation credit is received.


**EXHIBIT**

# MIDWEST CENTRAL HIGH SCHOOL

3. Washington Street

**Manito, Illinois 61546**

(309) 968-6766

## MISSION STATEMENT

"A successful graduate from Midwest Central High School has the knowledge and skills to be a positive, contributing member of society. Each graduate is able to read, write, compute and communicate effectively: solve problems in a variety of settings; demonstrate respect, motivation and self-discipline; and is mentally and socially prepared to be self-sufficient for the future."



It is the mission of the Midwest Central Community Unit School District #191 to ensure all students have an equal opportunity to develop to their maximum potential.

To fulfill this mission, the district will strive to develop students who:
- Learn how to learn, are lifelong learners, and have effective communication, computational and thinking skills;
- Take pride in themselves, their school, their work, and their community;
- Take a conscious, responsible role in issues that effect the global community;
- Are responsible, cooperative, productive citizens who display a strong work ethic;
- Understand and respect the needs and differences of others;
- View change as an opportunity for growth;
- 
- Enjoy physical, emotional, social and mental well-being;
- Set goals and are motivated to achieve them;
- Are globally competitive.

The District will maintain a safe, positive school climate by providing:
- A well-qualified, nurturing staff;
- A strong academic foundation in the basic skills;
- Career and occupational guidance;
- Facilities and activities that prepare our students for the technological age of the 21st century;
- An atmosphere conducive to positive and active parent and community relations;
- Encouragement and support of student participation in co-curricular activities;
- Continuous school improvement.



EXHIBIT

E

## INTRODUCTION

This student handbook has been prepared to explain the policies, procedures and practices of Midwest Central High School. This handbook represents the combined views of the Student Council, parents, faculty and administration, and has been approved by the Board of Education. This handbook is a general overview and guideline of expectations but is not an all-inclusive contract.

## PHILOSOPHY STATEMENT

It is the expressed desire of the Midwest Central Board of Education, administrators and instructional staff, that all students at Midwest Central High School enjoy academic success as well as social gratification by positive experiences they have through their involvement in academic and co-curricular activities while at Midwest Central. Each incoming freshman will work toward acquiring the necessary credits for graduation and ultimately receive a diploma signifying that accomplishment. This requires a concentrated effort by three important parties: the student, the parent and the instructors. Daily attendance, completion of assignments, preparation for tests, cooperation with instructors and a willingness to understand and work within the guidelines as stated in the student handbook are all major ingredients for a successful learning experience. At any time questions or concerns arise, parents are encouraged to call the high school office at 968-6766 or come to school to find the answer or address the concern they might have.

## NONDISCRIMINATION STATEMENT/SECTION 504

Midwest Central District #191 shall provide equal employment opportunities to all persons regardless of their race, color, religion, creed, national origin, sex, sexual orientation, age, ancestry, marital status, arrest record, military status or unfavorable military discharge, citizenship provided the individual is authorized to work in the United States, use of lawful products while not at work, being a victim of domestic or sexual violence, physical or mental handicap or disability, if otherwise able to perform the essential functions of the job with reasonable accommodation, and other legally protected categories. At Midwest Central CUSD #191 equal educational and extracurricular opportunities shall be available for all students without regard to race, color, national origin, sex, religious beliefs, physical or mental handicap or disability, status as homeless, or actual or potential marital or parental status, including pregnancy. Further, the District will not knowingly enter into agreements with any entity or any individual that discriminates against students on the basis of sex or any other legally protected status,

1

MS softball –18 players
MS baseball - 18 players
MS girls' basketball - 15 players at each level
MS boys' basketball - 15 players at each level players
MS girls' volleyball – 15 players at each level
MS girls' track - 35 members
MS boys' track - 35 members
MS cheerleaders - 6 members at each level

HS volleyball - JV 15 players, Varsity 15 players
HS wrestling - 26 wrestlers
HS girls' basketball - JV 15 players, Varsity 15 players
HS boys' basketball - freshman 15 players, JV 15 players, Varsity 15

HS girls' track - 35 members
HS boys' track - 35 members
HS softball - JV 25 players, Varsity 20 players
HS baseball - JV 25 players, Varsity 20 players
HS cheerleaders – 15 members
HS cross country – 14 runners
HS pom pon squad - 12 members
HS golf - 12 players
HS flag Corps/Color Guard – 12 members



EXHIBIT

P

## DISMISSAL FROM THE ACTIVITY FOR VIOLATIONS OF THE ACTIVITIES CODE
1. Reported violations of the activities code will be investigated.
2. Violations observed by the coach/sponsor will result in immediate action.
3. Written records of the date and circumstances of each report will be kept in the participant's school records.

### Definitions:
1. This activities code is in effect twelve months a year. For a middle school student, this code takes effect with the coach's meeting if the student participates in a fall sport as a sixth grader, or at registration for the sixth grade if the student does not participate in a fall sport. It ends on the day of middle school graduation. For a high school student, this code takes effect on the day of middle school graduation and ends on the day of high school graduation or the date of the final co-curricular event for that student, whichever is later. Violations and penalties related to this code do not carry over from middle school to high school. All high school students start over with a clean slate.
2. Co-curricular activities covered by this code include all I.E.S.A. and I.H.S.A. activities (athletics, speech, drama/plays, scholastic bowl, student council) and any activities representing the school in the community (band, cheerleaders, pom pons, flag corps/color guard, etc.)

### Objectives:
1. To place academic endeavors above all other activities.
2. To develop in each participant a feeling of pride, a sense of accomplishment and a respect of others' feelings and attitude.
3. To promote improvement in the individual's moral character, and physical and mental development.
4. To develop activities of superior quality by stressing teamwork, emotional self-control and constructive release of energies.

## ACADEMIC REQUIREMENTS
In order to be eligible to participate in any school-sponsored or school-supported athletic or extra-curricular activity, a student must maintain a passing grade in EACH course. Any student participant failing to meet these academic criteria shall be suspended from the activity for seven calendar days or until the specified academic criteria are met, whichever is longer.
1. Midwest Central High School:
   A. Participants must have passing grades in all courses each week. This must include a minimum of 20 hours of classroom instruction per week.
   B. Participants will have their grades checked every Friday by the athletic director. Anyone not passing all classes will be ineligible for extra-curricular competition on the following Monday through Sunday.
   C. The grade reported by the teacher on Friday will be the cumulative grade for the class at that point in the semester.
   D. If a student receives an "Incomplete" in any class, it may be made up at any time during the week at the teacher's convenience. When an "Incomplete" changes to a passing grade, the teacher will notify the athletic director and the student will regain his/her eligibility.
   E. If a student is ineligible during a semester, he/she may continue to practice with the group at the sponsor's discretion, but may not dress for the activity or travel with the team or group.
   F. If a student is not passing ALL classes at the end of each semester, the student will be ineligible for all extra-curricular activities for the next nine weeks. That student is not allowed to practice the activity or travel with the team or group. If the student is not passing all classes at the end of that nine weeks, the student is ineligible for all sports and extra-curricular activities for the remainder of that semester. Classes taken during summer school do not change regular session ineligibility.
2. Midwest Central Middle School:
   A. Participants must have passing grades in all classes each week.
   B. Participants will have their grades checked every Friday by the principal or athletic director. Anyone not passing all academic classes will be ineligible for competition in extra-curricular activities on the following Monday through Sunday.

# Midwest Central Community Unit

### District #191
### Jerry L. Meyer, Superintendent

December 17, 2010

**Jay Blair**
High School Principal
**Tim Turner**
Assistant High
School Principal
910 S. Washington
Manito, IL 61546
Ph: (309) 968-6766
Fax: (309) 968-8340

**J. Douglas
Cunningham**
Middle School
Principal
**Sara Porter**
Assistant Middle
School Principal
121 N. Church
Green Valley, IL
61534
Ph: (309) 352-2300
Fax: (309) 352-2903

**Steve McAdams**
Primary School
Principal
**Erin Stone**
Assistant Primary
School Principal
450 Southmoor
Manito, IL 61546
Ph: (309) 968-6464
Fax: (309) 968-7652

**Board Members**
Susan Frank
Cheryl Friedrich
Mark Berg
Steve Krueger
Kris Spangler
Doug Clark
Bill Grant

Mr. and Mrs. Toby Rademaker
6301 Wagonseller Road
Manito, IL 61546

     Re:   N

Dear Mr. and Mrs. Rademaker:

     105 ILCS 5/10-20.30 requires school districts maintaining a high school to adopt a "no pass, no play" policy for extracurricular activities. As required by statute, the Board of Education of Midwest Central School District adopted an Activities Code which, among other provisions, imposes academic requirements. Based on section 1F of those academic requirements, your son, N**** R**********, is currently ineligible to participate in extracurricular activities. In particular, Nick failed geometry during the second semester of the last school year. As a consequence of that failure, N**** was ineligible to participate in extracurricular activities for the first nine weeks of this semester. At the end of the first nine weeks of this semester, N**** was failing his drama class. Since he was not passing all classes at the end of the first nine weeks of this semester, he is ineligible for all sports and other extracurricular activities until the beginning of the second semester. While N**** did pass a geometry course taken through Morton School District during the summer of 2010, section 1F specifically provides that classes taken during summer school do not change regular season ineligibility. For these reasons, N**** is currently ineligible to play basketball during the holiday break between the end of the first semester and the beginning of the second semester.

     On November 29, 2010, I received a letter from your attorney Jim Rochford. In that letter, Mr. Rochford asserts that N**** has been recently diagnosed with attention deficit hyperactivity disorder ("ADHD"). Mr. Rochford also asserted that N**** ineligibility for participation in extracurricular activities constitutes a form of discrimination against N**** based upon his asserted disability. Subsequently, you appeared on N****s behalf with Mr. Rochford during the December 16 meeting of the Board of Education. During his presentation to the Board, Mr. Rochford made two primary assertions:

     1.     N**** suffers from ADHD which qualifies as a disability under several federal statutes. As a consequence of his disability, the District is obligated to provide reasonable accommodations to Nick. The accommodations suggested by Mr. Rochford include application of an IHSA rule which allows (but does not require) school districts to accept summer school work in the calculation of a student's grade for purposes of determining the student's

**EXHIBIT**
tabbies
G-1

eligibility. Alternatively, Mr. Rochford proposed the application of a "week to week" review of N████'s eligibility rather than the standard provided by the Activities Code. The approval of either accommodation would presumably restore N████'s eligibility so that he could play on the boys' basketball team during the upcoming holiday break.

2.     The prospect of being ineligible to play basketball during the holiday break has caused N████ to become depressed and to have suicidal thoughts. You suggested that you were considering the possibility of having some form of assistance present at your home if the Board did not during its December 16 meeting take action which would allow N████ to play basketball during the holiday break. Mr. Rochford represented that you have consulted with Dr. Day out of concern that N████ may attempt to harm himself and that you have made an appointment for N████ to be examined by Dr. Day.

I have thus far responded administratively to both your requests made on N████'s behalf and Mr. Rochford's similar requests. After hearing your comments and Mr. Rochford's presentation during its December 16 meeting, the Board declined to intervene in this matter. As a consequence, I will continue to have primary responsibility for responding to this matter on behalf of the District.

Over the last several weeks I have devoted a significant amount of time to consideration of this matter. I have spoken with the administrators at the high school, spoken with and received comments from members of the Board of Education, reviewed all of the materials which you have submitted        to me and consulted with our legal counsel. Based on that effort, I have reached the conclusions hereinafter set forth.

In support of the assertion that N████ suffers from ADHD, Mr. Rochford provided with his letter of November 29 a brief three sentence letter dated November 21, 2010 from Karla White. On the afternoon of December 16, Mr. Rochford also provided a second letter from Ms. White dated December 7, 2010 which explains in somewhat greater detail the basis for her diagnosis. Finally, Mr. Rochford submitted three pages of notes from the office of Dr. William Fisher. I received a copy of an email from District legal counsel Michael Tibbs to Mr. Rochford requesting information on Ms. White's qualifications to make the diagnosis of ADHD. Mr. Tibbs further inquired about Ms. White's qualifications during your appearance before the Board on December 16. I have thus far seen no information in response to those requests which demonstrates Ms. White's qualifications to make such a diagnosis. Furthermore, based on a review of the notes from Dr. Fisher's office and on comments made during your appearance before the Board on December 16, it appears that Dr. Fisher never actually examined N████ in connection with this diagnosis. It is also apparent that N████ has not yet seen Dr. Day. Consequently, we have no diagnosis from Dr. Day concerning N████'s condition. For these reasons I am not comfortable with the basis for the diagnosis.

Based upon my review of the materials and information which you and Mr. Rochford have provided, I am also struck by the complete absence in any of those materials of any professional recommendation as to the nature of any program or accommodations which are appropriate for N████ given the nature of the asserted disability. The only request for an accommodation is that N████ be allowed to play basketball despite the fact that he is ineligible under the Activities Code currently in effect in the District. I am not prepared to recommend or approve any such accommodation without appropriate professional input. In fact, it is conceivable that approval of the accommodations suggested by Mr. Rochford in close proximity to

EXHIBIT

G-2

intimations of suicidal tendencies could actually reinforce those tendencies to N⬛'s detriment. For all of these reasons I am at this time unwilling to approve any deviation from the Activities Code as currently written.

Whenever it is suggested that a student suffers from a disability, the District follows procedures established under the Individuals With Disabilities Education Act to seek consent for a multi disciplinary evaluation of the student by the District's special education staff to determine whether or not a disability exists and, if it does exist, the nature of the program or accommodations necessary to address that disability. It is my understanding, that evaluation is scheduled to commence at the beginning of the second semester on January 4, 2011.

While not directly germane to the foregoing analysis and conclusions, I will address Mr. Rochford's assertions about comments attributed by Mr. Rochford to High School Principal Jay Blair. Specifically, Mr. Rochford states that "Jay Blair publicly expressed his opinion to the entire high school staff that N⬛⬛ was a "troublemaker" and that each member should closely scrutinize his behavior as a student." I have heard credible suggestions that N⬛ regularly engaged in aggressive and intimidating conduct directed to toward other students while in junior high. Depending upon what was actually said about N⬛, I may have some concerns. However, it is appropriate for members of the high school staff to be alerted to the possibility that such conduct might occur and to appropriately react if it does occur. In any event, I have seen absolutely no evidence that any comments made when N⬛ entered high school, whatever those comments may have been, were in any way responsible for or related to his failing grade in his drama class at the end of the first nine weeks of the current semester.

Assuming N⬛ meets the eligibility requirements established by the Activities Code at the end of the current semester, he will be eligible to play basketball at the beginning of the next semester. In the meantime I and other members of the administration and staff are committed to working closely with you to complete a thorough evaluation of N⬛. Based upon the outcome of that evaluation, we are all committed to providing in a nondiscriminatory manner the free appropriate public education and related services to which he is entitled. The District, of course, welcomes input from any physician or therapist who is providing assistance to N⬛. However, N⬛ will not be eligible to play on the boys' basketball team during the upcoming holiday break.

Sincerely,

*Jerry Meyer*

Jerry Meyer, Superintendent
Midwest Central

c:    James Rochford

EXHIBIT

6-3