E-FILED
Wednesday, 22 December, 2010 10:21:12 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANITA RADEMAKER, as parent and next best friend of N.R., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>JAY BLAIR, JERRY MEYER, MIDWEST CENTRAL HIGH SCHOOL, and MIDWEST CENTRAL UNIT SCHOOL DISTRICT #191,<br><br>Defendants. | Case No. 10-3332 |

## O R D E R

This matter was before the Court on Tuesday, December 21, 2010, for a hearing on Plaintiff's Motion for Temporary Restraining Order. This Order supplements the oral rulings made at the conclusion of that hearing, during which the Motion for Temporary Restraining Order was denied.

### BACKGROUND

Plaintiff's son is a senior student at Midwest Central High School. She contends that her son suffers from a disability, namely Attention Deficit Hyperactivity Disorder ("ADHD"), as diagnosed by Licensed Clinical Professional Counselor Karla White ("White") on November 21, 2010, and for which he has been prescribed medication by Dr. William Fisher ("Fisher"). On December 20, 2010, Plaintiff filed a TRO seeking an order restraining Defendants from discriminating against her son on the basis of his disability by continuing to hold him ineligible to participate in athletics and extra-curricular activities pursuant to District policy. Specifically, Plaintiff requests that

Defendants apply an IHSA Rule in lieu of the District's Academic Requirements in order to permit her son to participate in extracurricular activities, including the holiday tournaments in men's basketball, prior to his eligibility date of January 4, 2011.

During the spring 2010 semester, Plaintiff's son received a failing grade in geometry. Pursuant to the District's Academic Requirements, this made him ineligible to participate in athletics for the first nine weeks of the fall 2010 semester. At the end of the first nine weeks of the fall 2010 semester, Plaintiff's son was failing Drama. This then made him ineligible to participate in athletics for the remainder of the semester pursuant to Academic Guideline 1.F. Plaintiff asserts that her son successfully raised his grade in that geometry class to a passing grade through a summer school course.

Plaintiff alleges that her son became ineligible to participate in athletics as a result of attempting to meet his academic requirements without appropriate medical treatment or accommodations for his condition. Since being diagnosed and receiving medical treatment, his ability to function academically has "markedly improved," and he is currently passing all of his courses for the semester.

Although Plaintiff states that she is not asking the school to refrain from applying eligibility standards to her son, that is essentially what she is doing in asking the School District to forego its own Academic Regulations and apply the non-mandatory provisions of IHSA Rule 3.022, which would permit but not require the consideration of her son's summer school grade in determining his scholastic standing for the previous semester.[1]

---

[1] IHSA Rule 3.022 provides that passing work in at least 20 credit hours "shall have been completed in the semester for which credit is granted or in a recognized summer school program which has been approved by the Board of Education and for which
(continued...)

If this were done, Plaintiff's son would arguably not have been ineligible for the first nine weeks of the fall 2010 semester, and his failing grade in Drama would have made him ineligible on a week-to-week basis rather than for the remainder of the semester, allowing him to play in the upcoming holiday basketball tournaments.

Plaintiff requested this relief from the School Board and District Administration. Her requests were denied, leading to the filing of the present litigation.

## DISCUSSION

A temporary restraining order ("TRO") is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction. Coca-Cola Co. v. Alma-Leo U.S.A., Inc., 719 F.Supp. 725, 726 (N.D.Ill. 1989). The purpose of a TRO, similar to that of a preliminary injunction, is to minimize the hardship to the parties pending the ultimate resolution of the suit. Faheem-El v. Klincar, 841 F.2d 712, 717 (7th Cir. 1988). The standards for a TRO and a preliminary injunction are functionally identical. Bernina of America, Inc. v. Fashion Fabrics International, 2001 WL 128164, at * 1 (N.D.Ill. Feb. 9, 2001).

Injunctive relief, including the entry of a TRO, is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) that no adequate remedy at law exists; and (3) that the movant will suffer irreparable harm if the injunction is not granted. Ty, Inc. v. Jones

---

[1](...continued)
graduation credit is received." However, issue number 92 in the Illustrations for Section 3.020 of the IHSA Bylaws, provides that, "Summer school work **may** be counted toward scholastic eligibility for the ensuing fall semester . . . ." Accordingly, the Rule is clearly permissive in application rather than mandatory.

Group, 237 F.3d 891, 895 (7th Cir. 2001). If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied. Id.; *see also,* Duct-O-Wire Co. v. U.S. Crane, Inc., 31 F.3d 506, 509 (7th Cir. 1994); Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 314-15 (7th Cir. 1994); Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 11-12 (7th Cir. 1992). The Court then sits as a court of equity, weighing all these factors and employing a sliding-scale approach. Id. That is, the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor." Id.

## LIKELIHOOD OF SUCCESS

Title II of the ADA provides in relevant part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, by reason of such disability, be excluded from participation in or be denied the benefits of the service, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132; Washington v. Indiana High School Athletics Association, Inc.,181 F.3d 840, 846 n.8 (7th Cir. 1999). In order to maintain a claim under the ADA, a plaintiff must show: (1) that he suffers from a disability; (2) that he is "otherwise qualified" to participate in athletics; and (3) that he is being excluded from playing basketball by reason of his disability. Id., at 843.

Initially, there is a question as to whether Plaintiff can demonstrate that her son suffers from a disability. The "diagnosis" of ADHD was made by Licensed Clinical

4

Professional Counselor ("LCPC") Karla White. Although there is a surprising dearth of authority on this question, the Court is aware of other cases in the context of post-traumatic stress disorder where it has been held that an LCPC is not qualified to make a medical diagnosis.

In United States v. Crosby, 713 F.2d 1066, 1076-77 (5th Cir. 1983), the Fifth Circuit held that the trial court had properly refused to classify a counselor as an expert "on the ground that only physicians could qualify as diagnostic experts concerning this medical condition." In Hawkins v. St. Clair County, 2009 WL 839272, at *4-5 (S.D.Ill. March 30, 2009), the plaintiff conceded that a licenced clinical professional counselor was not competent to render a diagnosis in Illinois. The court went on to find that while the counselor was not qualified to diagnose PTSD in his patient, his training would allow him to identify signs and symptoms of mental illness based on his observations during treatment if an appropriate foundation could be laid. Id. Finally, in Carlson v. Banks, 2007 WL 5711692, at *11 (N.D.Ill. Feb. 2, 2007), the LCPC admitted that PTSD was a medical diagnosis, and the plaintiff stipulated that she did not have an adequate foundation to diagnose PTSD or give opinions regarding permanency and/or future treatment.

The Court is unaware of any compelling reason to not conclude that ADHD, like PTSD, is a medical diagnosis and therefore cannot generally be diagnosed by an LCPC. See Geoghan v. Long Island Rail Road, 2009 WL 982451, at * 16 (E.D.N.Y. April 9, 2009). In the absence of any binding rule in the Seventh Circuit, these cases are persuasive precedent suggesting the applicability of a bright line rule in this

situation.  Accordingly, the Court finds that LCPC White is not competent to diagnosis Plaintiff's alleged disability.

This brings us to C. William Fisher, D.O., who is apparently Plaintiff's family physician and prescribed medication for the condition "diagnosed" by White. (¶7 of Plaintiff's Petition for TRO) There is no evidence or allegation in the record suggesting that Dr. Fisher conducted any independent examination or review to confirm White's "diagnosis." Exhibit C-5 is a progress note indicating that Dr. Fisher's office spoke with LCPC White, who "states [Plaintiff] is positive on ADHD scale." Dr. Fisher then prescribed medication apparently without any examination. Exhibit C-6 again documents a phone call to Dr. Fisher's office and his prescription of a different medication, again apparently without any examination. Exhibit C-8 documents a denial of the prescription requested by Dr. Fisher by Plaintiff's insurance company based on the failure to have previously tried other therapeutic options. In the December 17, 2010, letter from Superintendent Meyer (Exhibit G1-3) further notes an admission by Plaintiff's counsel during his appearance before the School Board the previous night to the effect that Dr. Fisher never actually examined Plaintiff in connection with the "diagnosis."

Although Plaintiff's counsel represents in his Affidavit that John R. Day, a clinical psychologist, is evaluating the situation and in the process of rendering an independent diagnosis, the evidence of record indicates that Dr. Day's examination and treatment of Plaintiff's son was for his depression and possible suicidal ideation related to this situation rather than specifically with respect to the ADHD. [Doc. #7 at 1]. Plaintiff also suggests that Dr. Day's Affidavit confirms or adopts the analysis of LCPC White. The Court disagrees that Dr. Day's Affidavit is sufficiently clear to permit this finding. That

6

being said, for purposes of resolving the TRO, the Court is willing to accept that there has been a sufficient showing in this regard, as presumably neither Dr. Fisher nor Dr. Day would have prescribed medication and treatment without having a good faith basis for believing that it was warranted and appropriate.

Assuming a proper diagnosis by a qualified medical or mental health professional, the next issue is whether Plaintiff's son suffers from a "disability" under the ADA. Under the terms of the statute, a claimant must be a qualified individual with a disability, which is further defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the . . . position. . . ." 42 U.S.C. § 12111(8).

An individual is "disabled" under the ADA if he has: (1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); Riemer v. Illinois Department of Transportation, 148 F.3d 800, 804 (7th Cir. 1998). Here, Plaintiff alleges that her son suffers from ADHD, which is claimed to have interfered with the major life activity of learning.

In assessing whether an individual is substantially limited, "[t]he applicable ADA regulations explain that a person is 'substantially limited' in a major life activity when he is '[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" Turner v. The Saloon, Ltd., 595 F.3d 679, 689 (7th Cir. 2010), *citing* 29 C.F.R. § 1630.2(j)(1)(ii).

7

Here, Plaintiff's son completed five semesters of high school with all passing grades, some of which were even solid A's and B's. In his sixth semester, he received one failing grade and passing grades in all of his other six classes. Even in what Plaintiff describes as her son's worst semester this fall, he received passing grades in all of his classes with the exception of Drama and was able to finish the semester with all passing grades. This points against a finding that any limitation is of sufficient magnitude to be deemed "substantial."

Other than sporadic periods of weekly ineligibility, for which no evidence was introduced as to the timing or frequency of such incidents, the record indicates that Plaintiff's son is able to do at least as well as, if not actually better than, an average person with respect to learning on a regular, continued basis and that the periods where his ability to learn have been significantly affected by his condition are the exception rather than the rule. Accordingly, while it is clear that Plaintiff's son has some limitations as a result of his ADHD, Plaintiff has failed to demonstrate that her son suffers from the kind of substantial or severe limitation in his ability to learn as compared to an average person that is required under the ADA.

The Court must therefore conclude that Plaintiff does not have a likelihood of success on the merits of her claim. The Motion for Temporary Restraining Order could be denied on this basis alone.

## IRREPARABLE HARM AND LACK OF ADEQUATE REMEDY AT LAW

A party seeking preliminary injunction must show that it has "no adequate remedy at law and as a result, will suffer irreparable harm if the injunction is not issued." Promatek Industries, Ltd. v. Equitrac Corp., 300 F.3d 808, 813 (7th Cir. 2002). In discussing whether a remedy at law is "adequate", the Seventh Circuit has stated "we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." Cooper v. Salazar, 196 F.3d 809, 817 (7th Cir. 1999), *citing* Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386 (7th Cir. 1984). Here, there is no dispute that Plaintiff would have no adequate remedy at law.

As for the irreparability of harm, Plaintiff suggests that in the absence of relief, her son's college athletic career will be damaged as a result of the loss of his opportunity to be observed by coaches and scouts during the holiday basketball tournaments. With all due respect, this alleged damage is simply too speculative to be given much weight in the analysis. However, Plaintiff testified that the denial of the ability to play basketball as a part of the team has had and continues to have a negative physical and emotional impact on her son. There is some evidence that this impact has worsened to the point of possible suicidal ideations requiring professional treatment. The Court concludes that these circumstances do present the possibility of irreparable harm.

## BALANCING OF THE HARMS

When the court weighs the interests of the parties and the public interest in whether the injunction is to be granted or denied, it "seek[s] at all times to minimize the costs of being mistaken." Abbott Laboratories, 971 F.2d at 12 (internal quotation marks omitted). Thus, "the more likely it is the plaintiff will succeed on the merits, the less the balance of

irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." Id.

Balancing the hardships therefore involves a two-step process. First the court must assess the movant's chance of success. This inquiry is similar to the likelihood of success factor considered at the threshold stage. In making the threshold inquiry, however, the movant must only show some likelihood of success on the merits. Roland Machinery, 749 F.2d at 387. At the balancing stage, the court must determine how great that likelihood is. Then it must balance the hardships in accordance with this determination.

Having concluded that Plaintiff has no reasonable likelihood of success on the merits, the balance of harms would have to weigh more substantially in her favor. The Court must consider the hardship to Plaintiff as a result of her son missing three games during the holiday tournament before becoming eligible for the rest of the season as opposed to the hardship to the District if forced to grant an exception to an otherwise universally applicable academic standard that they believe would erode the purpose of that standard. Defendant Meyer testified that the District has adopted a strict "no pass, no play" policy in accordance with state law and that the mission or philosophy of the District is to place academics first. Maintaining this mission requires consistent application of effort by the students, as well as a bright-line rule by the Administration to keep everyone on equal footing. Relaxing the requirements of the activities code would not be consistent with the District's mission, as it would elevate the importance of athletics and extra-curricular activities over education and result in a slippery slope that would further erode the District's emphasis on academics.

Unlike the situation in the Washington case relied on by Plaintiff, the facts of the present situation would appear to indicate that granting the exception sought by Plaintiff would be contrary to and erode the very purposes of the policy at issue. Under these circumstances, and considering the legitimate goal of the District to guarantee all students access to an education, the Court must find that the balance of the harms weighs in favor of Defendants.

## PUBLIC INTEREST

In determining whether to grant preliminary injunctive relief, the court must consider the impact on the public interest if such relief is granted. Abbott Laboratories, 971 F.2d at 11-12; A.J. Canfield Co. v. Vess Beverages, Inc., 796 F.2d 903, 909 (7th Cir. 1986). Several public interests are conceivably relevant: (1) the public interest in maintaining standards of commercial ethics; (2) encouragement of invention and development; and (3) the protection of the inventor's investment of time, money, and manpower in developing trade secrets that ultimately result in benefits to the public.

The Court finds this element to be a wash. If Plaintiff had made a prima facie case and demonstrated an unreasonable failure to accommodate a disability under the ADA, then there would be a great public interest in making it right. In the absence of this showing, the public interest would tip in the opposite direction.

## CONCLUSION

For the reasons set forth in this Order, as well as those stated during the December 21, 2010, hearing, Plaintiff's Motion for Temporary Restraining Order [#1] is DENIED.

ENTERED this 22nd day of December, 2010.

s/ Michael M. Mihm  
Michael M. Mihm  
United States District Judge